**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| COMPANY PROPERTY AND CASUALTY GROUP, | ) ) ) | 3:12-cv-00595-HDM-VPC |
| Plaintiff, | ) ) | ORDER |
| vs. | ) ) | |
| CONSOLIDATED AGENCY PARTNERS, dba MENICUCCI INSURANCE ASSOCIATES, KAREN FAUST, RISK PLACEMENT SERVICES, INC. dba RISK PLACEMENT SERVICES, INSURANCE BROKERS, JOAN VASCONES, GLORIA LAM, SKY HIGH SPORTS, LLC, SKY HIGH SPORTS ORANGE COUNTY OPERATIONS, LLC, and ROLLAND WEDDELL, *et al.* | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Companion Property and Casualty Group's ("plaintiff") first amended complaint (#46) filed on March 23, 2013, asserts fourteen causes of action against ten defendants based on their alleged involvement in procuring a workers' compensation policy from plaintiff for Sky High Sports, an entity

1

operating indoor trampoline centers.  All defendants have appeared and answered plaintiff's complaint.  Sky High has asserted three counterclaims against plaintiff.

Plaintiff has settled its claims against defendants Pinnacle Underwriters, Highpoint Risk Services, and according to a stipulation filed by the parties (#155) Risk Placement Services, Joan Vascones, and Gloria Lam (collectively "RPS").[1]  Plaintiff has also reached a settlement with defendants Consolidated Agency Partners, dba Menicucci Insurance Associates and Karen Faust (collectively "CAP"), which is contingent on the court's determination that the settlement was reached in good faith.  CAP's motion for good faith settlement determination remains pending.

Presently before the court are several motions for summary judgment.  The CAP defendants have filed a motion for summary judgment on all of plaintiff's claims (#165).  Plaintiff has responded (#175), and CAP has replied (#181).  Defendants Sky High Sports, LLC, Sky High Sports Orange County Operations, LLC, and Rolland Weddell (collectively "Sky High") have filed a motion for summary judgment on all of plaintiff's claims as well as on their counterclaims and one of their affirmative defenses (#168). Plaintiff has responded (#174), and Sky High has replied (#180). Finally, plaintiff has filed a motion for partial summary judgment on its claim of negligent misrepresentation (#170).  Defendants have opposed (#177, #178) and plaintiff has replied (#182).[2]

---

[1] The court has granted motions for good faith settlement filed by Highpoint and Pinnacle.  As of yet, RPS has not filed any such motion.

[2] The parties have also filed several motions in limine. As the motions for summary judgment can be decided without reference to the objected evidence, those motions are not herein considered.

2

**Facts**

Sky High Sports operates recreational indoor trampoline centers. (*See* Pl. Mot. Summ. J. Ex. 1 (Raymond Dep. 11-12); CAP Opp'n Pl. Mot. Summ. J. Ex. C (Weddell Dep. 6-16); Sky High Mot. Summ. J. Ex. S at 2)). Before 2010, Sky High's workers' compensation coverage was issued under the "amusement" class code.[3] (Pl. Mot. Summ. J. Ex. 2 (Lewis Dep. 19-20, 40-41, 43)). Sky High owner and managing member Rolland Weddell ("Weddell") met with insurance broker Karen Faust ("Faust") of Menicucci Insurance Associates ("Menicucci") to discuss Sky High's insurance needs, including workers' compensation.[4] (*Id.* at 24; *id.* Ex. 5 (Weddell Dep. 134-36); CAP Mot. Summ. J. Ex. M (Weddell Dep. 16); *id.* Ex. D (Faust Dep. 31-32)). During their conversation, Faust and Weddell discussed the nature of Sky High's business. Faust claims Weddell said Sky High employees do not teach people how to do back flips or tricks on the trampolines and do not perform such in the scope of their duties.[5] (CAP Mot. Summ. J. Ex. D (Faust Dep. at 41-42, 76-77); Pl. Mot. Summ. J. Ex. 5 (Wedell Dep. 78)). Faust did not ask whether employees jump up and down on the trampolines. (CAP Mot. Summ. J. Ex. M (Weddell Dep. 77)). However, Weddell says he told

---

[3] The agent handling Sky High's workers' compensation policy before 2010 had submitted Sky High's applications under the amusement class code after consultation with the Workers' Compensation Insurance Rating Bureau of California ("WCIRB"). (Pl. Mot. Summ. J. Ex. 2 (Lewis Dep. 16, 28-29)).

[4] Menicucci had already by that time placed personal and commercial policies for Weddell, as well as some policies for Sky High. (Pl. Mot. Summ. J. Ex. 4 (Faust Dep. 21-22); CAP Mot. Summ. J. Ex. M (Weddell Dep. 34, 117)).

[5] Weddell does not recall Faust asking whether employees do flips, but he would have told her "definitely not." (CAP Mot. Summ. J. Ex. M (Weddell Dep. 48).

3

Faust that employees "travel on the trampolines and . . . in order to travel they jump on the trampolines"; he also told her that employees would "perch" on pads separating the trampolines until they have to move. (Pl. Mot. Summ. J. Ex. 5 (Weddell Dep. 48, 76-78)). Faust did not visit any Sky High centers or interview any employees. (*Id.* at 32-33, 37, 40)). While she did visit the web site, she did not recall seeing any AIRobics training depicted on the site. (CAP Mot. Summ. J. Ex. D (Faust Dep. 37-40, 72, 124, 213-14)).

Faust believed that Sky High's classification should be sports and fitness instead of amusement. (*See* Pl. Mot. Summ. J. Ex. 6; *id.* Ex. 4 (Faust Dep. 37)). The premium with a fitness class code was significantly less than the premium with an amusement class code. (Pl. Mot. Summ. J. Ex. 5 (Weddell Dep. 135-36) (testifying that the premium for amusement was 2.5 times more expensive than that of sports and fitness). Weddell asked Faust to place Sky High's workers' compensation coverage. (*Id.*)

Faust prepared an "Acord 125," an application for workers' compensation insurance. (CAP Mot. Summ. J. Ex. D (Faust Dep. 99). In the "Nature of Business/Description of Operations" box, she wrote: "Sports and fitness facility using trampolines. Employees are used at the front desk for check, monitoring wrist bands for time, food area, maintenance. They do not teach nor are they out on the trampolines."[6] (Pl. Mot. Summ. J. Ex. 3A). Under "Rating Information," Faust included the fitness class code. (*Id.*)

---

[6] In stating that employees "do not teach nor are they out on the trampolines," Faust says she intended to convey that "employees are not on the trampoline teaching people how to do jumps or tricks." (CAP Mot. Summ. J. Ex. D (Faust Dep. 84-86)).

4

Finally, she represented that Sky High did not have "any policy or coverage declined, canceled, or non-renewed during the prior 3 years," and that no work was performed "underground or above 15 feet." (*Id.*)

Faust emailed Sky High's application to insurers and wholesale brokers, including defendant RPS. (*See id.* Ex. 6). In her emails, Faust noted that the policy had been written under the "amusement" code but that she felt it had been misclassed and should be "classed in Physical Fitness." (*Id.*) She stated that employees are not on trampolines unless someone needs help, that they do not provide any training or officiating, and that although Sky High offers Airobics and dodge ball, employees stand on the "catwalk" and call out moves and do not participate nor go out on the trampolines.[7] (*Id.*) She pointed to Sky High's web site for "information on the business." (*Id.*)

Several insurers declined to quote. (Pl. Mot. Summ. J. Ex. 4 (Faust Dep. at 205-06)). One stated it would pass because Sky High had trampolines and the losses showed "some claims where employees jumped off the trampolines and injured themselves." (*Id.*; *id.* Ex 7).

RPS forwarded the application to defendant Pinnacle, which forwarded the application to Dallas National. (CAP Mot. Summ. J. Ex. P; *id.* Ex. A (Leatzow Dep. 52); *id.* Ex. N (Lam Dep. 21)). Dallas National, acting as plaintiff's general agent, underwrote

---

[7] Weddell does not recall telling Faust that employees would lead AIRobics classes by calling out moves from the separator pads. (*Id.* Ex. M (Weddell Dep. 77)). However, he did tell her employees "don't participate." (*Id.*) Faust appears to admit she assumed employees called out AIRobics moves from "catwalks" based on her conversation with Weddell. (CAP Mot. Summ. J. Ex. D (Faust Dep. 80-81)).

5

the policy, bound coverage and issued Sky High a workers' compensation policy with effective dates of September 21, 2010, to September 21, 2011. (CAP Mot. Summ. J. Ex. B (Hirsch Dep. 43-47); Sky High Mot. Summ. J. Ex. C.; *id.* Ex. H).

Jerry Sam of Dallas National reviewed the application and made the final decision to bind coverage. (CAP Mot. Summ. J. Ex. C (Sam Dep. 17-18, 27)). Sam described his review as "almost like box underwriting." (*Id.* at 52-53)). He compared the estimated losses to the estimated premium to determine if the numbers fit "in the box"; as the "loss run ratio" (estimated losses to estimated premium) was under 40 percent, Sam issued the policy without further investigation.[8] (*Id.* at 31-32, 52-53, 83, 161-62, 164-66)). Although Sky High's "loss runs" – a history of prior loss claims – were available to Sam, he did not review them. (*See id.* at 50, 159, 166); *id.* Ex. F). The loss runs available to Sam contained some claims possibly involving trampolines. (*Id.* Ex. F). Faust's email did not make it into Dallas National's file and therefore was not considered by Sam. (*Id.* Ex. C (Sam Dep. at 174, 190)). While Sam assumed that employees would at least occasionally be on the trampolines in the course of maintenance, cleaning, or assisting customers, and that they would engage in "low exposure jumping," he testified that had the application stated employees were on the trampolines, he would have

---

[8] The estimated premium is based in part on the class code. Plaintiff argues that the code is dictated by "state government" – and thus that Faust's selection of the "fitness" rating was a material misrepresentation. Defendants argue that insurers are not bound by the ratings of the WCIRB and are responsible for selecting the appropriate code. Thus, they argue, Faust's selection of the "fitness" code was merely a suggestion as to what she believed the appropriate code should be.

investigated further, and had he known employees were jumping on trampolines, he would not have issued the policy. (*Id.* at 93-94, 108-09, 121-30).

On July 6, 2011, Faust prepared and submitted a renewal application. (*See* Pl. Mot. Summ. J. Ex. 3D). The renewal application was in all material respects identical to the original application.[9] (*See id.*) Faust also submitted updated loss run information. (*See* CAP Mot. Summ. J. Ex. T; *id.* Ex. U; *id.* Ex K; *id.* Ex. C (Sam Dep. 64, 66, 82-83, 209-12, 215)). The updated loss runs contained some injuries possibly related to the trampolines. (Sky High Mot. Summ. J. Ex. K). Available in Dallas National's file at the time of renewal was a document suggesting Sky High had been classified under "amusement" in the past. (CAP Mot. Summ. J. Ex. C (Sam Dep. 182-85); *id.* Ex. F; Sky High Mot. Summ. J. Ex. E). Plaintiff renewed the policy and bound coverage from September 21, 2011, to September 21, 2012. (Sky High Mot. Summ. J. Ex. N).

On October 3, 2011, Sky High employee Jake Likich became paralyzed when, while trying to perform a trick on the trampoline, he landed on his head, upper back and neck area instead of on his back. (Pl. Mot. Summ. J. Ex. 13; CAP Opp'n Ex. I (Reeve Dep. 27)). Likich had been on duty at the time and was jumping with other Sky High employees who were off the clock, including Sydney Reeve. (CAP Mot. Summ. J. Ex. E (Reeve Dep. 28)). Although Likich had been practicing AIRobics moves, Reeve testified that the trick he had attempted was not part of being an AIRobics instructor. (CAP

---

[9] Sky High asserts that no one from Sky High ever signed the renewal application. Sky High also argues that it was not a "renewal" application but an entirely new application.

Mot. Summ. J. Ex. E (Reeve Dep. 26-28, 39-40)).  Likich made a claim under the workers' compensation policy issued by plaintiff.  Plaintiff has now settled Likich's workers' compensation proceeding and has agreed to pay him a total $8 million.  (*See* Doc. #206).

Plaintiff asserts the applications submitted by Faust materially misrepresented the nature of Sky High's business, including the extent to which employees were on the trampolines.  Following the incident, plaintiff canceled Sky High's workers' compensation coverage mid-term.  (Pl. Opp'n to Sky High Mot. Summ. J. Ex. 9).  This lawsuit followed.

**Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine

8

issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment.").  Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).  Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

If the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237

9

F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers").  The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).  "[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts.  But if the nonmoving party fails to discharge that burden–for example by remaining silent–its opportunity is waived and its case wagered."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

Finally, if the parties file cross-motions for summary judgment, the court must consider each party's motion separately and determine whether that party is entitled to a judgment under Rule 56.  In making these determinations, the court must evaluate the evidence offered in support of each cross-motion. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

**Analysis**

As an initial matter, plaintiff and CAP agree that Nevada law applies to this case. (*See* CAP Mot. Summ. J. 16-18;  Pl. Opp'n to CAP Mot. 15).

I. <u>Breach of Fiduciary Duty</u>

Plaintiff's claim of breach of fiduciary duty is asserted against CAP.

"A breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). A "fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Id*. To prevail on a breach of fiduciary duty claim, the plaintiff must establish: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009).

The complaint alleges CAP owed a fiduciary duty "by virtue of [its] role as insurance agent[] and broker[]" and that it owed plaintiff "a duty to adequately, competently, and faithfully place insurance coverage with and through" plaintiff. CAP argues that it did not owe any such duty to plaintiff.

The record reflects that in all material respects, CAP acted on Sky High's behalf as Sky High's agent. *See Hiott v. Guar. Nat. Ins. Co.*, 329 S.C. 522, 530, 496 S.E.2d 417, 422 (Ct. App. 1997) ("Generally, an insurance broker is the agent of the insured, not the insurer."). Plaintiff has presented no evidence that CAP acted in any way on plaintiff's behalf, or that plaintiff had any relationship with CAP, contractual or otherwise. (*See* CAP Mot. Summ. J. Ex. B (Hirsch Dep. 26)). There is therefore no evidence that CAP, acting as the agent for the insured, was under a duty to

act for or to give advice for the benefit of plaintiff, the insurer. *See Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 381 (S.D.N.Y. 2009) (finding as a matter of law that broker could not be found to owe insurer a fiduciary duty because "[a]s a broker, he is properly understood as the agent of the insured . . . and not the insurer"). Further, as Nevada has not recognized a duty owed by a broker toward an insured, it therefore follows that a broker does not owe any duty toward an insurer with which the broker has no relationship and on whose behalf the broker has not acted. *See CBC Fin., Inc. v. Apex Ins. Managers, LLC*, 291 F. App'x 30, 32 (9th Cir. 2008) (unpublished disposition).

Plaintiff's opposition completely fails to establish the existence of a fiduciary relationship between plaintiff and CAP. It does not even directly argue such a relationship exists. In fact, not one of the cases cited in the section of plaintiff's opposition devoted to this claim involves a claim of breach of fiduciary duty or a special relationship, and the one case that mentions fiduciary duty does so to make clear that no such duty is owed by a broker to an insurer where the broker is not the insurer's agent. *See Century Sur. Co. v. Crosby Ins., Inc.*, 124 Cal. App. 4th 116, 124, 21 Cal. Rptr. 3d 115, 121 (2004) (internal punctuation omitted) ("Since a broker that is not the insurer's agent owes no fiduciary duty to the insurer, the broker is not liable for an alleged failure to reveal known facts.").[10]

Accordingly, CAP is therefore entitled to summary judgment on

---

[10] Although not argued by the plaintiff in its opposition, those cases involving "dual agency" cited in earlier briefs are inapposite, as there is no evidence that CAP acted on plaintiff's behalf in any way.

12

the fiduciary duty claim.

## II. Constructive Fraud

Plaintiff asserts a claim of constructive fraud against CAP. "Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence." *Long v. Towne*, 639 P.2d 528, 529-30 (Nev. 1982). Constructive fraud requires a confidential or fiduciary relationship, which "exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Id.*

As with the breach of fiduciary duty claim, CAP argues that no special or confidential relationship exists between it and plaintiff. Thus, as with the breach of fiduciary duty claim, plaintiff has failed to show material issues of fact exist that support a constructive fraud claim. Accordingly, CAP's motion for summary judgment will be granted as to plaintiff's constructive fraud claim.

## III. Detrimental Reliance

Plaintiff concedes that summary judgment should be granted as to this claim.

## IV. Concert of Action

CAP moves for summary judgment on a claim of "concert of action." However, such a claim is not included in plaintiff's first amended complaint, and the amended complaint superseded plaintiff's original complaint. *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011). Accordingly, CAP's arguments in

this regard are moot.

V. <u>Weddell in his Individual Capacity</u>

Sky High's motion to dismiss Weddell in his individual capacity is denied without prejudice.

VI. <u>All Other Claims and Defenses</u>

As to all remaining claims, counterclaims, and affirmative defenses, the court finds that there are either triable issues of material fact or that the moving party has failed to show it is entitled to judgment as a matter of law.  Summary judgment will therefore be denied as to those claims.

**Conclusion**

In accordance with the foregoing, IT IS ORDERED:

1. Plaintiff's motion for partial summary judgment (#170) is **DENIED**;

2. Faust's motion for summary judgment (#165) is **GRANTED** as to plaintiff's claims of breach of fiduciary duty, constructive fraud, and detrimental reliance and is **DENIED** in all other respects; and

3. Sky High's motion for summary judgment (#168) is **GRANTED** as to plaintiff's claim of detrimental reliance and **DENIED** in all other respects.

IT IS SO ORDERED.

DATED: This 24th day of June, 2014.

_____
UNITED STATES DISTRICT JUDGE

14